IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GARY and ANNA-MARIE CUPPELS,   :
individually and on behalf of all others   :
similarly situated,   :
  :
      Plaintiffs,   :
  :
      v.   :     C.A. No.: S18C-06-009
  :
MOUNTAIRE CORPORATION,   :
an Arkansas corporation,   :
MOUNTAIRE FARMS, INC., a   :
Delaware corporation, and   :
MOUNTAIRE FARMS OF   :
DELAWARE, INC., a Delaware   :
corporation,   :
  :
      Defendants.   :

**ORDER**

AND NOW TO WIT, this _____ day of February, 2019, the Court having duly considered the

Motion for Reconsideration of Commissioner's Order on Motion for a Gag Order filed by Mountaire

Corporation, an Arkansas corporation, Mountaire Farms, Inc., a Delaware corporation, and

Mountaire Farms of Delaware, Inc., a Delaware corporation (collectively, "Defendants") pursuant

to Superior Court Civil Rule 132(a)(3) and the response thereto filed by Gary and Anna-Marie

Cuppels, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), IT

APPEARS THAT:

1.    On June 13, 2018, Plaintiffs filed suit against Defendants, the operators of chicken

processing plants. Plaintiffs allege physical injuries and property contamination have resulted

from Defendants' method of disposing of wastewater and sludge from their plants. Plaintiffs also claim harm from air pollution associated with Defendants' business.

2. A related Superior Court case is *State of Delaware Department of Natural Resources & Environmental Control v. Mountaire Farms of Delaware, Inc.*, C.A. No. S18M-06-002. This case is an environmental regulatory enforcement action brought by the Delaware Department of Natural Resources and Environmental Control ("DNREC") and alleges violations of state statutes, state regulations, and permits. DNREC and Defendants have negotiated a consent decree in that action. However, Court approval of the consent decree is still pending. Plaintiffs and others have sought to intervene in that case.

3. After initiating this lawsuit, Plaintiffs' counsel and their paid consultants held a televised press conference in which Plaintiffs' representatives made statements about Defendants' conduct that were set forth as fact. In fact, these comments constituted the opinions of Plaintiffs' legal team.

4. Defendants' representatives began releasing public statements questioning the merits of Plaintiffs' claims and the quality of their legal representation. Moreover, Defendants commenced purchasing print, radio, and television advertisements. This advertising campaign allowed Defendants to communicate directly to constituents who comprise the potential jury pool in this case.

5. Counsel exchanged emails concerning the nature of the comments representatives of both parties were making but were unable to reach an agreement as to the appropriateness of the public statements.

6. On September 20, 2018, Plaintiffs filed a Motion for a Gag Order ("the Motion"). In it, Plaintiffs alleged Defendants' advertisements contained language and knowledge Defendants do not use in their normal course of business or marketing. Thus, Plaintiffs surmised, the advertising campaign was likely the product of Defendants' discussions with their legal counsel. By way of the Motion, Plaintiffs sought a gag order prohibiting Defendants and their counsel from making any further public statements about the proposed consent decree, efforts to improve its wastewater processing facility, and any other matters material to either the consent decree or the class action case.

7. The Motion for a Gag Order was heard by a Superior Court Commissioner on October 26, 2018. By way of written order dated October 30, 2018, the Commissioner granted a Limited Gag Order ("the Order"). The Order prohibits the attorneys, experts, consultants, and witnesses for both parties, the Plaintiffs, Defendants' officers, and any persons or entities acting on behalf of Defendants in a public relations capacity from publicly commenting on this case, except in accordance with Delaware's Professional Conduct Rule 3.6.[1]

---

[1] Rule 3.6 provides, in pertinent part:
(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

(b) Notwithstanding paragraph (a), a lawyer may state:
(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
(2) information contained in a public record;
(3) that an investigation of a matter is in progress;
(4) the scheduling or result of any step in litigation;
(5) a request for assistance in obtaining evidence and information necessary

3

8. The Defendants filed a Motion for Reconsideration of the Order pursuant to Superior Court Civil Rule 132 ("Rule 132") on November 12, 2018.

9. As provided by Rule 132, Commissioners are "empowered to conduct non case-dispositive hearings and to hear and determine any non case-dispositive matter pending before the Court, as well as to conduct case-dispositive hearings and to submit to a judge of this Court proposed findings of fact and recommendations for the disposition, by a judge, of any such case-dispositive matter." *Continental Cas. Co. v. Borgwarner Inc.*, 2016 WL 3909467, at *2 (Del. Super. Ct. July 14, 2016). The standard of review for a Commissioner's decision depends on whether the matter heard was case-dispositive or non case-dispositive. *Id.* The issuance of a gag order is a pretrial matter that is non-dispositive. *See Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985). Rule 132 provides that a judge may reconsider a Commissioner's order "only where the movant demonstrates that the Commissioner's order

---

thereto;
(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; ...

...

(c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

(d) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

4

is based upon findings of fact that are clearly erroneous, or is contrary to law, or is an abuse of discretion." *Doe v. Slater*, 2014 WL 6669228, \*1 (Del. Super. Ct. Nov. 12, 2014).

10. Defendants contend that the Order is based upon findings of fact that are clearly erroneous. A decision "is clearly erroneous when, although there is evidence to support a finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 1990 WL 200482, at \*1 (Del. Super. Ct. Nov. 20, 1990) (internal quotation marks and citations omitted). Such is not the case here. Defendants argue the Order failed to acknowledge that one of the challenged communications was excused by Comment 7 to Rule 3.6. Defendants also maintain the Order mischaracterizes an advertisement released by Defendants. Finally, Defendants protest that they have not sought a change of venue, as the Order implies they intend to do. The Court concludes the factual findings made by the Commissioner are supported by the record. Comment 7 to Rule 3.6 reads, in pertinent part, "[E]xtrajudicial statements that might otherwise raise a question under this Rule may be permissible when they are made in response to statements made publicly by another party, another party's lawyer, or third persons, where a reasonable lawyer would believe a public response is required in order to avoid prejudice to the lawyer's client." First, this Comment is permissive, and does not provide for blanket public comment in response to the public comment of another party in the lawsuit, as Defendants imply. Second, while the Commissioner noted that the statement was problematic, the Commissioner did not punish any party for previous public comments or advertisements. The purpose of the Order is to provide guidance to the parties *going forward*. The Commissioner's finding that the intent

5

of Defendants' print advertisement was to sway public opinion in favor of Defendants is supported by the text of the advertisement itself. The advertisement heavily emphasized Defendants' "critical part of the local economy" and insinuated that a lawsuit, such as the one here, would have dire consequences for, not only their employees and business partners, but "the broader community." This is heavy-handed language, indeed. Finally, the Order's reference to a motion to change venue is made in context of considering alternative ways to remove prejudice from the proceedings if the parties were to continue to try to the case in the media. The record buttresses the need for the Court to step in and restrict public comment in this case.

11.    Defendants also argue the Order is contrary to law and an abuse of discretion. In so doing, Defendants argue the gag order is not narrowly tailored to protect Defendants' First Amendment rights and is not the least restrictive means necessary. Defendants point to case law, relied upon by the Commissioner, that warns against the unnecessary issuing of gag orders. Finally, Defendants quibble that the terms of the Order are overly broad and lacking in direction. Again, the Court disagrees. The Commissioner found that, if the parties continued trying the case in the media, "finding an impartial jury may be impossible." The Commissioner reviewed other options and deemed them insufficient to address this risk. The Court has the authority to issue a gag order when there is a substantial likelihood of material prejudice to the parties' rights to a fair trial.[2] The Order specifically excludes public comments allowed by Rule 3.6. Included are comments related to the nature of the

---

[2] *Sokolove v. Marenberg*, 2013 WL 6920602, at \*2 (Del. Super. Ct. Dec. 20, 2013).

proceedings, information contained in a public record, and other general information that may be relevant to the public. The Commissioner's decision to restrict language designed to influence the potential jury pool ensures a fair trial. Further, the determination is a balanced one as its terms apply to both litigants.

WHEREFORE, IT IS HEREBY ORDERED that Defendants' November 12, 2018, Motion for Reconsideration of Commissioner's Order on Motion for Gag Order is DENIED.

Richard F. Stokes, Judge

oc: Prothonotary
cc: All Counsel of Record

7